THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM A. WOOD, in his official capacity as ) <br> Forest Supervisor for the Salmon-Challis National ) <br> Forest; HARVEY FORSGREN, Regional Forester ) <br> of Region Four of the U.S. Forest Service; ) <br> ABIGAIL KIMBELL, in her official capacity as ) <br> Chief of the U.S. Forest Service; and UNITED ) <br> STATES FOREST SERVICE, an agency of the ) <br> United States Department of Agriculture, ) <br> ) <br> Defendants. ) <br> ) | Case No. CIV 07-452-EJL <br><br> MEMORANDUM ORDER |

Plaintiff, Alliance for the Wild Rockies, seeks an order to preliminarily enjoin Forest Supervisor William Wood, Regional Forester Jack Troyer, Forest Chief Abigail Kimbell and the United States Forest Service (collectively "the Defendants"), and their agents, from taking any action to continue implementing the Wallace Timber Sale, which is part of the Moose Creek Fuels Reduction Project ("the Project"). Defendants oppose the motion. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

**Discussion**

Plaintiff alleges that Defendants' decision to authorize the Project and the 2004 amendment of the Land and Resource Management Plan ("Forest Plan") for the Salmon National Forest ("Salmon NF") violates the National Forest Management Act ("NFMA"), 16 U.S.C. § 1604 et seq. and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. Specifically,

MEMORANDUM ORDER                                                                                        1

Plaintiff contends that Defendants: (1) violated NFMA by failing to ensure the viability of species that use old growth forest, (2) violated NEPA by failing to take a "hard look" at the Project's effects on species that use old growth forest, and (3) violated NFMA and NEPA by failing to comply with regional soil quality standards and by using a scientific methodology that Plaintiff claims is unreliable.

Any challenge to a final agency action is reviewed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Under the APA, a reviewing court must affirm an agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

To obtain a preliminary injunction the Plaintiff must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." Miller v. California Pac. Medical Ctr., 19 F.3d 449, 456 (9th Cir. 1994). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id. When the public interest is involved, it must be a necessary factor in the Court's consideration of whether to grant preliminary injunctive relief. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir.1988).

### 1. Irreparable Injury, Public Interest and Balance of Hardship

The Ninth Circuit has concluded that where, as here, the challenged activity involves logging activity it will often "fulfill the irreparable injury criterion because of the long term environmental consequences." Earth Island Inst. v. U.S. Forest Serv., 351 F.3d 1291, 1299 (9th Cir.2003). This is because "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." Nat'l Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722, 737 (9th Cir. 2001).

MEMORANDUM ORDER 2

Similarly, the Ninth Circuit has consistently held that "in a case such as this one where the purpose of the challenged action is to benefit the environment, the public's interest in preserving precious, unreplenishable resources must be taken into account in balancing the hardships." Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1125 (9th Cir. 2002). On the other side of the balance, Defendants have asserted the potential biologic harm to the forest caused by delaying the Project, as well as the probable economic harms to the logging contractor, the local community and the government from enjoining the logging activity. (Decl. Of Daniel R. Panks). The Ninth Circuit, however, has determined that "the permanent and certain harm of any violation of the environmental laws outweighs the speculative harm that might result from a failure to engage in a statutorily prohibited activity." Lands Council v. McNair, 494 F.3d 771, 779 (9th Cir. 2007). And it also has held "time and again that the public interest in preserving nature and avoiding irreparable environmental injury outweighs economic concerns."[1]/ Id. at 780 (collecting cases).

Thus, the case law favors granting a preliminary injunction if Plaintiff can "show probable success on the merits." Earth Island Inst., 351 F.3d at 1298. Where, as here, one of the Plaintiff's claims involves the Defendants' failure to prepare an Environmental Impact Statement for the Project, Plaintiff need only 'raise substantial questions whether a project may have a significant effect on the environment." Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1211 (9th Cir.1998).

2. Success on the Merits

On at least one issue, Plaintiff has made the required showing to obtain preliminary injunctive relief. Plaintiff has questioned the Project's effects on species that use old growth forest.

---

[1]/ The Court finds troublesome that Plaintiff waited a year after the final decision by the Forest Service, and until after the purchaser of the timber sale had started on-the-ground activities, to file this lawsuit. The Court also is very concerned with the almost certain economic impact an injunction will now have on the contractor and the local community. However, the Court's previous attempt to give what it considers adequate weight to these factors was rejected by the Ninth Circuit. See e.g. Lands Council v. McNair, 494 F.3d 771, 779-80 (9th Cir. 2007). Thus, the Court is constrained in this regard by the controlling precedent of the Ninth Circuit. Id.

MEMORANDUM ORDER                                                                                      3

The Forest Plan requires the Forest Service to "[m]aintain at least ten percent (71,879 acres) of the forested land outside of wilderness as old growth for dependent species." (Decl. of Beverly F. Li, Ex. C). This ten percent old growth is to be designated by applicable forested ecosystem, dispersed throughout the Salmon NF in stands of at least 80 acres. (Defs.' Opp'n at 3). Under certain amendments to the Forest Plan and related regulatory guidelines, providing old growth of this quantity and quality is expected to provide adequate habitat for old growth dependent species.

In Idaho Sporting Congress, Inc. v. Rittenhouse, 305 F.3d 957, 966 (9th Cir. 2002), the Ninth Circuit held that "[a]ll site specific actions must be consistent with adopted forest plans." As in Rittenhouse, the Project at issue here "depend[s] on the Forest Plan old growth viability standard to insure that the Forest Act's requirement of maintaining viable populations of native species, including old growth dependent species, is met." Id. Therefore, "[i]f the Forest Plan's standard is invalid, or is not being met, then the timber sales that depend upon it to comply with the Forest Act are not in accordance with law and must be set aside."[2]/ Id.

It appears likely that the Salmon NF's old growth retention standard is either invalid and/or not being met in several important aspects with regard to the ten percent standard. First, the Defendants' own expert states that the definition used to originally identify old growth retention stands ("OGRS") is flawed: "The criteria that were used to define and delineate the OGRS in 1983 would not hold up under examination using presently accepted old forest criteria. At the time the [Forest] plan was written, the best information was used, but in the subsequent decades, significant research has been done to broaden knowledge about these areas and the species that use them." (Decl. of Beverly F. Li, Ex. H, Jennifer Purvine, Forest Service Planning Wildlife Biologist, at 11).

Second, the decision to designate old growth stands in blocks as small as 80 acres is no longer considered scientifically acceptable: "[Today] the size of the stands (80 acres at least 200 feet wide), would be considered far too small to meet the needs of most old forest dependent species." (Id.). Moreover, even the minimum 80 acre criteria has been ignored in many old growth

---

[2]/     Under Rittenhouse, therefore, Defendants' ripeness argument lacks merit.

MEMORANDUM ORDER                                                                                        4

stand designations: "The minimum 80 block criterion was identified throughout the planning process. However, this criterion was not adhered to in many cases. . . . Overall, the mean size of old growth retention polygons is 62.5 acres." (Id. at 8).

Finally, it appears that the Salmon NF currently does not meet the ten percent old growth standard. At most, the Salmon NF has 69,880 acres of verified old growth or of stands capable of being managed for old growth characteristics,[3] significantly short of the ten percent requirement.[4] For all the above reasons, the Court believes that the record presents serious questions as to whether the Salmon NF's implementation of the old growth standard is currently in compliance with NFMA and NEPA.

Defendants argue, however, that all of this discussion regarding old growth is somewhat irrelevant because "the Project will not treat old growth acres." (Defs.' Opp'n at 10-11). The Rittenhouse court considered and rejected this same argument:

> Because site specific actions . . . depend on a valid and adequately implemented Forest Plan old growth species viability standard to ensure compliance with the [NFMA's] requirement of maintaining viable populations of native species, and the

---

[3] "In areas where there was not enough old growth . . ., the next younger age class of the deficient species was substituted with the intention for these age classes to be reserved [and managed] as future old growth." (Decl. of Beverly F. Li, Ex. H, Jennifer Purvine, Forest Service Planning Wildlife Biologist, at 4).

[4] Both the Forest Plan and Defendants use an acreage figure of 71,879 as representing the 10% requirement, but that acreage is only 9.7% of the Salmon NF's 744,900 acres. (Decl. of Beverly F. Li, Ex. H, Jennifer Purvine, Forest Service Planning Wildlife Biologist, at 8 (hereinafter "Purvine")). Even so, Defendants argue that "there are a total of 76,676 acres of old growth stands across the Salmon NF, which exceeds the (Forest Plan) requirement of 71,879." (Defs.' Opp'n at 9). Defendants arrive at this figure by including 6,796 acres of mapped high severity fire acreage, arguing that the Purvine report "does not contain language suggesting that wildfire have led to a lack of old growth stands." (Id. at 9 n.5). The Court disagrees. The Defendants' expert states that in the 6,796 high severity acres "old growth habitat characteristics no longer occur," and that while "[g]reen stands in a fire area could be managed towards achieving old growth characteristics," the high severity burned areas could not. (Purvine, at 7).
It should be noted that included in both the Defendants and Court's acreage calculation "are 3,393 acres of old growth retention stands within burned areas that have not had fire severity mapped," (id.), which ultimately may be identified as additional acres lacking "old growth characteristics."

MEMORANDUM ORDER                                                                                                  5

> viability standard here was both invalid and inadequately implemented, the sales must be set aside and logging thereunder enjoined.

305 F.3d 969-70. In other words, it is not possible to know if the Project contains "old growth acres" where the Salmon NF's definition of old growth and the method of designating the same may be invalid.[5]/

Having raised substantial questions on the merits and the possibility of irreparable injury, the Plaintiff is entitled to preliminary injunctive relief.  Because the Court concludes that Plaintiff has in this respect satisfied the requirement for obtaining a preliminary injunction, the Court need not consider the other arguments presented.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction (docket nos. 4 & 31) is **GRANTED** as follows: Defendants and their agents are preliminarily enjoined from taking any action to continue implementing the Moose Creek Fuels Reduction Project until such time as briefing is complete on the cross-motions for summary judgment in accordance with the stipulated briefing schedule (docket no. 37) and the Court has issued a ruling on the same.

DATED:  **May 21, 2008**



Honorable Edward J. Lodge
U. S. District Judge

---

[5]/   Defendants argue that Rittenhouse is factually distinguishable. While that might be true in some respects, Rittenhouse is on point with regard to the Salmon NF's apparent failure to "adequately implement[] Forest Plan old growth species viability standard to ensure compliance with the [NFMA's] requirement of maintaining viable populations of native species." 305 F.3d 970.

MEMORANDUM ORDER - 6